UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

In re:                          :

ROYAL DUTCH/SHELL TRANSPORT     :
SECURITIES LITIGATION           :

                                :

Civil Action No. 04-374(JWB)

**O P I N I O N**

**APPEARANCES**:

    BERNSTEIN, LIEBHARD & LIFSHITZ
    By:  Stanley D. Bernstein, Esquire
         Keith M. Fleischman, Esquire
         Jeffrey M. Haber, Esquire
         U. Seth Ottensoser, Esquire
         Mark T. Millkey, Esquire
    10 East 40th Street
    New York, New York  10016
    (Lead Counsel for Lead Plaintiff
    and the Class –
    Colbert Birnet, L.P.;
    Pennsylvania State Employees'
    Retirement System; and
    Pennsylvania Public School
    Employees' Retirement System)

    LYNCH, MARTIN, KANE, KUPER,
      KEEFE & BARTELS
    By:  John E. Keefe, Jr., Esquire
    830 Broad Street
    Shrewsbury, New Jersey  07702-4216
    (Liaison Counsel for the Class)

    ROBERTSON, FREILICH, BRUNO & COHEN
    By:  William W. Robertson, Esquire
         Jeffrey A. Cohen, Esquire
    One Riverfront Plaza
    Newark, New Jersey 07102-5468

        – and –

DEBEVOISE & PLIMPTON
By:  Colby Smith, Esquire
555 - 13th Street, N.W.
Washington, D.C.  20004
(Attorneys for Defendants
Royal Dutch Petroleum Company;
N.V. Koninklijke Nederlandsche
Petroleum Maatschappij;
The "Shell" Transport and
Trading Company, PLC;
Shell Petroleum, N.V.; and
The Shell Petroleum Company Limited)

AKIN GUMP STRAUSS HAUER & FELD
By:  James Osborne, Esquire
1333 New Hampshire Avenue, N.W., Suite 400
Washington, D.C.  20036
(Attorneys for Defendant Van der Vijver)

ROBINSON & LIVELLI
By:  Donald A. Robinson, Esquire
Two Penn Plaza East
Newark, New Jersey  07105
(Attorneys for Defendant KPMG NV)

BRESSLER, AMERY & ROSS
By:  Thomas A. McKinney, Esquire
P.O. Box 1980
Morristown, New Jersey  07962
(Attorneys for Defendant KPMG, Int'l.)

LOWENSTEIN SANDLER
By:  Marcela A. DePaulis, Esquire
65 Livingston Avenue
Roseland, New Jersey  07068
(Attorneys for Defendant PWC Int'l.)

HUGHES HUBBARD & REID
By:  John N. Poulos, Esquire
101 Hudson Street
Jersey City, New Jersey  07302
(Attorneys for Defendant PWC UK)

             - and -

HUGHES HUBBARD & REID
By:   William  R. Maguire, Esquire
      Savvas A. Foukas, Esquire
1 Battery Park Plaza
New York, New York  10004
(Attorneys for Defendant PWC UK)


**BISSELL**, <u>Chief Judge</u>

**TABLE OF CONTENTS**

**Facts and Background** . . . . . . . . . . . . .   6
    Overview . . . . . . . . . . . . . . . . . .   6
    Parties . . . . . . . . . . . . . . . . . .  12
    Structure of the Companies . . . . . . . . .  27
    Group Management . . . . . . . . . . . . . .  29
    Oil & Gas Reserves . . . . . . . . . . . . .  32
    Overbooking of Proved Reserves . . . . . . .  35
    Defendants' Alleged Knowledge of the
    Group's Overbookings . . . . . . . . . . . .  41
    Geographic Areas . . . . . . . . . . . . . .  51
    Proffered False and Misleading Statements
    and Omissions . . . . . . . . . . . . . . .  56
    Truth about Reported Reserves . . . . . . .  57
    SEC Investigation and other
    Regulatory Actions . . . . . . . . . . . . .  59
    Claims for Relief . . . . . . . . . . . . .  61

**Discussion** . . . . . . . . . . . . . . . . .  62
    I.   Rule 12(b)(1) Motion  to Dismiss
         for Lack of Subject Matter
         Jurisdiction . . . . . . . . . . . . .  62
                Standard of Law . . . . . . . .  62
                Application . . . . . . . . . .  64
                Conduct in the U.S. . . . . . .  65
                    Shell Deepwater Services . .  70
                    Audits at SDS in Houston . .  75
                    Investor Relations . . . . .  75
                Alleged Inconsistent Statements .  79
                Res Judicata . . . . . . . . . .  82
                International Comity . . . . . . . 84
    II.  Defendant Watts' Rule 12(b)(2)
         Motion to Dismiss . . . . . . . . . . .  87
                Standard of Law . . . . . . . . .  87
                General Jurisdiction . . . . . . .  88
                Specific Jurisdiction . . . . . .  89
                Exercise of Specific
                Personal Jurisdiction . . . . . .  90
    III. RDS Defendants' Rule 12(b)(6)
                Motions to Dismiss . . . . . . . .  93
                Standard of Law . . . . . . . . .  95
                Section 10(b), 15 U.S.C. § 78j(b)   99
                10(b) Claims against RDS . . . . . .100

10(b) Claims against Individual
Defendants . . . . . . . . . . . 107
Section 14(a) Claims . . . . . . . 124
Section 20(a) Claims . . . . . . . 126
IV.   Auditor Defendants' Rule 12(b)(6)
Motions to Dismiss . . . . . . . . 128
Statute of Limitations . . . . . 128
KPMG NV & PwC UK Motions . . . . 129
KPMG Int'l & PwC Int'l Motions . 141

**Conclusion** . . . . . . . . . . . . . . . . . . . 145

This matter comes before the Court on various motions to dismiss, pursuant to Federal Rules of Procedure 12(b)(1), 12(b)(2) and 12(b)(6), by the Individual and Corporate Defendants of Royal Dutch/Shell Transport and Defendants KPMG NV, KPMG International, PwC UK and PwC International.  On July 13 and July 15, 2005, this Court heard oral arguments on the aforesaid motions.[1]  This court has jurisdiction over this matter pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

### FACTS & BACKGROUND

**Overview**

Lead Plaintiff, the Pennsylvania State Employees' Retirement System and the Pennsylvania Public School Employees' Retirement System ("Lead Plaintiff"), brings this action on behalf of itself and all persons who purchased the securities of N.V. Koninklijke Nederlandsche Petroleum Maatschappij, a/k/a the Royal Dutch Petroleum Company, ("Royal Dutch") and The Shell Transport and Trading Company, PLC ("Shell Transport") (together, Royal Dutch and Shell Transport will be referred to as either "RDS", "The Shell Group" or the "Companies"), including the ordinary shares traded on overseas markets and the New York Stock Exchange ("NYSE") and the American Depository Receipts ("ADRs") trading on

---

[1]  The Court did not hear oral argument on Defendant Watts' motion to dismiss pursuant to Rule 12(b)(2), and upon the motions to dismiss Counts IV and V of the Consolidated Amended Class Action Complaint.  Decisions on those motions, based on the papers, are included in this Opinion.

the NYSE between April 8, 1999 and March 18, 2004 (the "Class Period").  The Defendants include: RDS, several of RDS's current and former senior executives, and RDS's outside auditors, PricewaterhouseCoopers LLP ("PwC UK") and KPMG Accountants N.V. ("KPMG NV"), as well as PricewaterhouseCoopers International and KPMG International.  The Complaint seeks to recover damages caused by alleged violations of the federal securities laws.

The claims in the Complaint stem from the dissemination by RDS of what Plaintiff characterizes as "materially false and misleading statements" concerning RDS's reported proved oil and natural gas reserves.  See Consolidated Amended Class Action Complaint ("Complaint"), ¶ 3.  The Complaint alleges that, during the Class Period, RDS issued false public reports, overstating: (a) their proved oil and natural gas reserves by billions of barrels of oil equivalent ("boe"), (b) their reserves replacement ratio ("RRR"), and (c) their future cash flows by over $100 billion.  Id.  Plaintiff claims that before and during the Class Period, the RDS Defendants repeatedly represented to the investing public that RDS was successfully identifying new proved oil and gas reserves and replacing existing proved reserves depleted by production.  New and existing proved reserves are key performance indicators in the oil and gas industry.  Id. ¶ 4. Such representations were made in proposals to market analysts, press releases, Annual Reports, filings with the United States

-7-

Securities and Exchange Commission ("SEC") and through other

public media.  Id.  RDS's joint reports include Form 20-F, which

the SEC requires to be filed annually.  The RDS Defendants

represented the following on Form 20-F for the years 1998-2002:

**1998**
**Reserves**
During 1998 the Group's total proved reserves for oil
(including natural gas liquids) and natural gas increased
from 19.4 to 20.5 billion barrels of oil equivalent .... The
net additions to proved reserves more than replaced the 1998
production, with replacement ratios of some 140% for oil
(compared with 130% in 1997) and some 250% for gas (compared
with 210% in 1997).

**1999**
**Reserves**
The overall 1999 replacement ratio of proved crude oil and
natural gas reserves and oil sands stands at 101% (147%
excluding 1999 divestments and acquisitions) .... The three-
year rolling average replacement ratio for total crude oil
and natural gas proved reserves ... stands at 132%,
reflecting the fact that oil and gas production over 1997-99
has been more than replaced by net additions over the same
period.

**2000**
**Reserves**
The proved hydrocarbon reserves replacement ratio for 2000
was 105% .... Therefore production during the year of 1.4
billion barrels of oil equivalent was more than replaced
.... The three-year rolling average proved hydrocarbon
reserves replacement ratio ... stands at 117%.

**2001**
**Reserves**
The proved hydrocarbon reserves replacement ratio for 2001
is 74% ... [A]nd the three-year rolling average ... now
stands at 101%.  Proved reserves are equivalent to more than
14 years of current production.

**2002**
**Reserves**
The proved hydrocarbon reserves replacement ratio for 2002

       was 117% and the five year rolling average ... now stands at
       109% .... Proved reserves are equivalent to more than 13
       years of current production.
Id. ¶ 4.

     Furthermore, the Complaint alleges that PwC UK and KPMG NV,

individually and jointly, issued materially false, misleading and

unqualified audit opinions that were included in the Class Period

financial statements filed with the SEC by RDS.  Id. ¶ 5.  In the

reports, PwC UK and KPMG NV purportedly misrepresented that each

had conducted their respective audits "in accordance with U.S.

generally accepted auditing standards ("GAAS")."  Id.

Furthermore, it is alleged that they falsely represented that the

audited financial statements presented fairly both the financial

position of the Shell Group, Shell Transport and Royal Dutch as

of December 31, 1998-2002 and the results of operations and cash

flows for each of those years, in accordance with generally

accepted accounting principles ("GAAP"), in the Netherlands and

the United States.  Id.

     On January 9, 2004, before the markets opened in Europe, RDS

released a disclosure entitled "Proved Reserve Recategorisation,"

which announced that in order to comply with SEC regulations, it

would be reducing previously reported proved reserves by 20%, or

approximately 3.9 billion boe.  Id. ¶ 6.  After that disclosure,

the trading price of the ordinary shares of both Shell Transport

and Royal Dutch and the ADRs of Shell Transport declined.  Id.

                                -9-

As a result of the disclosure, it is alleged that RDS lost $13.84 billion of market value. Id. After the initial announcement on January 9, 2004, RDS has further reduced its estimated proved oil and natural gas reserves three additional times - on March 18, April 19 and May 24, 2004 - for a total reclassification of 4.47 billion boe, or 23%. Id. ¶ 8.

Since the reclassification, four civil investigations by regulatory authorities in the United States and Europe have been commenced and the United States Department of Justice has initiated a criminal investigation. Id. ¶ 11. In a January 12, 2004 article in The Wall Street Journal, former SEC chief accountant Lynn Turner was quoted as follows: "A 20% restatement of proven reserves is a humongous error. For a company like Shell to have missed its proven reserves by that much is not an oversight. It's an intentional misapplication of the SEC's rules." Id. ¶ 11. (quoting The Wall Street Journal, "Shell Cuts Reserve Estimate 20% as SEC Scrutinizes Oil Industry," January 12, 2004). The Complaint alleges that on February 3, 2004, RDS's Group Audit Committee (the "GAC") retained Davis Polk & Wardwell ("Davis Polk") to lead a limited internal review into the circumstances resulting in the overbooking of reserves. Id. ¶ 12. On April 19, 2004, RDS released the executive summary of the March 31, 2004 Report of Davis Polk to the GAC (the "GAC Report") in which Davis Polk concluded that Shell Transport had been

overbooking reserves as early as 1997, during Defendant Philip Watts' and Defendant Walter van de Vijver's respective tenures as head of RDS's Exploration and Production ("EP") unit.  <u>Id</u>. ¶ 13.

The GAC report stated that the aforementioned executives "were alert to the difference between the information concerning reserves that had been transmitted to the public ... and the information known to some members of management." <u>Id</u>. ¶ 13.  The GAC report further stated that "EP managements' plan was to 'manage' the totality of the reserve position over time, in hopes that problematic reserve bookings could be rendered immaterial by project maturation, license extensions, exploration successes and/or strategic activity;" however, Defendants' "strategy 'to play for time' in the hope that intervening helpful developments would justify, or mitigate, the existing reserve exposures ... failed as business conditions either deteriorated or failed to improve sufficiently to justify historic bookings." <u>Id</u>. ¶ 14. The Complaint alleges that the GAC Report was accepted in full by the GAC on April 15, 2004, and by the members of the Supervisory Board of Royal Dutch and the non-executive Directors of Shell Transport on April 16, 2004.  <u>Id</u>. ¶ 15.

The Complaint further alleges that RDS's acceptance of responsibility for the alleged conduct was also set forth in the Annual Reports disseminated by Shell Transport and Royal Dutch shortly before the Amended Complaint was filed.  <u>Id</u>. ¶ 16.  The

following is an excerpt of one cited report:

> In connection with the restatement of proved reserves volumes described elsewhere in this report, Royal Dutch and Shell Transport have determined, based largely upon the investigation and report to the GAC, that there were deficiencies and material weaknesses in the internal controls relating to proved reserves bookings and disclosure controls that allowed volumes of oil and gas to be improperly booked and maintained as proved reserves.  The inappropriate booking of certain proved reserves had an effect on the Financial Statements, mainly understating depreciation, depletion and amortisation.

Id. ¶ 16.

The GAC Report also described that the overbooking of oil and natural gas reserves over such a lengthy period of time was possible only "because of certain deficiencies in the Company's controls."  Plaintiff alleges that "[u]nder GAAS, PwC UK and KPMG NV were required to review and understand RDS's internal control structure and determine whether reliance thereon was justified, and if such controls were not reliable, to expand the nature and scope of those controls to correct them." Id. ¶ 18.  Lead Plaintiff concludes that PwC UK and KPMG NV failed to do so. Id.

**Parties**

Defendant Royal Dutch is headquartered in The Hague, The Netherlands.  See Compl., ¶ 45.  Its common shares are registered with the SEC pursuant to Section 12(b) of the Exchange Act and trade on the New York Stock Exchange ("NYSE"). Id.  The principal trading markets for Royal Dutch shares are the NYSE and

-12-

the Euronext Exchange in Amsterdam.  Royal Dutch is one of the parent companies in the Shell Group and in conjunction with Shell Transport, owns, directly or indirectly, investments in the numerous companies referred to collectively as the "Group Holding Companies."  Id.

Defendant Shell Transport is headquartered in London, England.  Id. ¶ 46.  Its ordinary shares, as well as shares of an aggregate nominal amount of £1.50 and evidenced by ADRs, are registered with the SEC pursuant to Section 12(b) of the Exchange Act.  Id.  The primary market for Shell Transport's ordinary shares is the London Stock Exchange.  The ADRs trade on the NYSE. Id.  As the parent companies, Royal Dutch and Shell Transport do not directly engage in operational activities.  Id. ¶ 47.  Each own the shares in the Group Holding Companies and neither is part of the Shell Group.  Id.  Royal Dutch and Shell Transport appoint Directors to the Boards of the Group Holding Companies, from which they receive income in the form of dividends.  Id.  Royal Dutch has a 60% interest in the Group and Shell Transport has a 40% interest.

Defendant Sir Philip Watts is a citizen of the United Kingdom.  Id. ¶ 48.  Watts served as a Director and as a Managing Director of Shell Transport beginning in 1997, as Shell Transport's Chairman and as Chairman of the Committee of Managing Directors ("CMD") beginning in 2001, and as a Group Managing

-13-

Director beginning in 1997.  Id.  Watts was terminated on March
19, 2004.  Id.  Defendant Watts who joined the Shell Group as a
seismologist in 1969 held positions in Asia Pacific and Europe,
leading to positions as Exploration Director Shell-U.K. from 1983
to 1985, head of various exploration and production functions in
The Hague from 1985 to 1991, Chairman and Managing Director in
Nigeria from 1991 to 1994, Regional Coordinator Europe from 1994
to 1995, Director Planning Environment and External Affairs,
Shell International from 1996 to 1997, and CEO of the EP unit
from 1997 to 2001.  Id.  Watts signed the Annual Reports on Form
20-F filed with the SEC for 2001-2002 and allegedly falsely
certified the 2002 Form 20-F, including the financial statements
and reports, of Shell Transport and the Shell Group, pursuant to
the Sarbanes-Oxley Act of 2002.  The Complaint alleges that
despite the Shell Group's poor performance, Watts' salary more
than doubled between 1999 and 2002, due in large part to reserve
replacement credits on his compensation scorecard.  Id.  It is
alleged that in 2003 Watts received a 55% pay raise, increasing
his base salary to £1.8 million (approximately $3.2 million).
Id.  Upon termination, Watts allegedly received a severance
package that included three months' salary for 2003 (£450,000).
Id.

Defendant Walter van de Vijver, a citizen of the
Netherlands, served as a Director of Royal Dutch, the CEO of the

-14-

EP unit, a Managing Director of Royal Dutch, a Group Managing Director, and a member of the CMD from 2001 until his termination on March 19, 2004.  Id. ¶ 49.  Defendant van de Vijver joined RDS in 1979 as a petroleum engineer and worked in exploration and production in Qatar, Oman, the United States, the United Kingdom and The Netherlands.  Id.  Van de Vijver signed the 2002 Form 20-F and allegedly reviewed and authorized the filing of the 2001 annual report on Form 20-F.  Id.  Lead Plaintiff alleges that van de Vijver's salary tripled between 2001 and 2002, due in large part to reserve replacement credits on his compensation scorecard.  Id.

Defendant Malcolm Brinded is a citizen of the United Kingdom.  Id. ¶ 50.  Defendant Brinded has been a Director of Royal Dutch and has served as the CEO of RDS's Gas & Power unit since 2002, CEO of the EP unit since 2004, a member of the Royal Dutch Board of Management and a member of the CMD since 2002, and Vice-Chairman of the CMD in March 2004.  Id.  Brinded joined RDS in 1974 and has held various positions in the Company around the world, including Brunei, The Netherlands, Oman and the United Kingdom.  Id.  Lead Plaintiff alleges that Defendant Brinded reviewed and authorized the filing of the 2002 annual report on Form 20-F.  Id.

Defendant Jeroen van der Veer is a citizen of The Netherlands.  Van der Veer, at all relevant times a Director of

-15-

the Royal Dutch Board of Management, has served as a Group
Managing Director since 1997.  Id. ¶ 51.  Van der Veer has served
as President of Royal Dutch since 2000 and was promoted to
Chairman of the CMD in March 2004.  Id.  He joined RDS in 1971
and held a number of senior management positions around the
world.  Van der Veer served as the Vice-Chairman of the CMD from
1997-2003 and signed the allegedly false and misleading Annual
Reports on Form 20-F under the Sarbanes-Oxley Act.[2]  It is also
alleged that he reviewed and authorized the filing of the 1998
and 1999 Annual Reports on Form 20-F.  Id.

Defendant Judith Boynton is a citizen of the United States.
Boynton served as RDS's Chief Financial Officer ("CFO") beginning
in 2001 and as a Shell Transport Director and a Group Managing
Director beginning in 2003.  Id. ¶ 52.  Defendant Boynton served
as a member of the CMD from 2003 until her removal from all her
executive and directorial positions on April 19, 2004.  Id.
Boynton's responsibilities included preparing RDS's financial
statements which were filed with the SEC and disseminated to the
investing public and shareholders of RDS.  Id.  Defendant Boynton
was also responsible for overseeing RDS's internal disclosure and
financial controls to ensure that they were adequate and complied

---

[2] Defendants contend that the Complaint incorrectly alleges
that van der Veer was CMD Vice Chairman beginning in 1997.
Rather, Defendants submit that van der Veer held this position
from July 2000 until March 2004, when he became CMD Chairman.
See RDS Br. in Support of 12(b)(6) Motion to Dismiss, at 8.

with the federal securities laws.  Id.  Lead Plaintiff alleges that Defendant Boynton falsely certified RDS's annual report on Form 20-F for the year 2002 pursuant to the Sarbanes-Oxley Act. Id.

Defendant Paul Skinner is a citizen of the United Kingdom. Id. ¶ 53.  He served as a Director and as a Managing Director of Shell Transport beginning in 2000, as chief executive officer of Shell Oil Products beginning in 1999, and as a Group Managing Director and a member of the CMD beginning on January 1, 2000, until his retirement in September 2003.  Defendant Skinner allegedly reviewed and authorized the filing of RDS's 2000 through 2002 Annual Reports on Form 20-F.  Id.

Defendant Maarten van den Bergh is a citizen of The Netherlands.  Id. ¶ 54.  He has served as a Director of Royal Dutch since 2000, a Managing Director of Royal Dutch from 1992 to 2000, and as President of Royal Dutch from 1998 to 2000.  Id. From 1998 to 2000, van den Bergh served as Vice Chairman of the CMD.  Defendant van den Bergh allegedly reviewed and authorized the filing of RDS's Annual Reports on Form 20-F for the years 2000 through 2002.  Id.

Defendant Mark Moody-Stuart is a citizen of the United Kingdom.  Id. ¶ 55.  He has served as a Director of Shell Transport and as the Chairman of Shell Transport from 1997 to 2001.  Id.  From 1991 through July 2001, he served as a Group

-17-

Managing Director and member of the CMD.  It is alleged that
Defendant Moody-Stuart reviewed and authorized the filing of
RDS's Annual Reports on Form 20-F for the years 2000 through
2002.  Id.

Defendant Aad Jacobs is a citizen of The Netherlands.  Id. ¶
56.  Throughout the Class Period, Jacobs served as a Director of
Royal Dutch, and since 2002 as Chairman of the Royal Dutch
Supervisory Board and Chairman of the GAC.  Id.  It is alleged
that Defendant Jacobs reviewed and authorized the filing of RDS's
Annual Reports on Form 20-F for the years 2000 through 2002.  Id.

Defendant Harry Roels is also a citizen of The Netherlands.
Id. ¶ 57.  Defendant Roels served as a Managing Director at Royal
Dutch and a member of the Board of Management of RDS beginning in
July 1999.  Id.  He joined RDS in 1971 as a petroleum engineer,
working in exploration and production in Malaysia, Brunei, the
United Kingdom, Turkey, Norway and The Netherlands.  Id.
Defendant Roels relinquished his positions with RDS in June 2002.
It is alleged that Defendant Roels reviewed and authorized the
filing of RDS's Annual Reports on Form 20-F for the years 1999
through 2002.  Id.

Defendant Steven L. Miller is a citizen of the United
States.  Id. ¶ 58.  Defendant Miller served as a Group Managing
Director beginning in 1996 and as a Director of Shell Transport's

-18-

Board of Directors beginning in 1998.[3]  He also served as the
Chairman, President and Chief Executive Officer of Shell Oil
Company.  Id.  During Defendant Miller's tenure, he worked with
the CMD in the formation of RDS's strategy and in the development
and deployment of RDS's senior executives.  Id.  It is alleged
that Defendant Miller reviewed and authorized the filing of RDS's
Annual Reports on Form 20-F for the year 2001.  Id.

Lead Plaintiff alleges that the Individual Defendants
(Watts, van de Vijver, Brinded, van der Veer, Boynton, Skinner,
van den Bergh, Moody-Stuart, Jacobs, Roels and Miller), as
officers and/or directors of Royal Dutch or Shell Transport, were
privy to confidential and proprietary information concerning RDS,
its operations, reported reserves and business prospects.  Id. ¶
73.  Furthermore, Plaintiff proffers that the Individual
Defendants "had access to internal documents, reports, and other
information, including, among other things, the material,
adverse, non-public, information concerning the Companies' and
the Shell Group's classification of proved oil and gas reserves."
Id.  As a result, Plaintiff alleges, the Individual Defendants
were responsible for the truthfulness and accuracy of the Shell

---

[3] Defendants submit that Mr. Miller was never a Shell
Transport director, but rather served as the Managing Director of
Royal Dutch from July 1996 through July 1, 1999.  On July 1,
1999, Miller became CEO and Chairman of Shell Oil Company, a U.S.
company within the Group.  Defendants allege that Miller left the
Group in 2001.  See RDS Br. in Support of 12(b)(6) Motion to
Dismiss, at 6.

Group's and the Companies' public statements.  Id.  Plaintiff
also characterizes the Individual Defendants as "controlling
persons" of the Companies within the meaning of Section 20 of the
Exchange Act.  Id. ¶ 74.  The Complaint alleges that "[b]y reason
of their positions with Royal Dutch and Shell Transport, they
were able to and did, directly or indirectly, in whole or in
material part, control the content of public statements issued by
or on behalf of the Shell Group, including statements to
securities analysts and financial reporters."  Id.  Accordingly,
Plaintiff contends that the Individual Defendants are liable for
the allegedly false statements, because the statements were
"group-published" information, the result of the collective
action of the Individual Defendants.  Id.

      Plaintiff alleges that PwC and KPMG provided unqualified
Independent Auditors' Reports for the Shell Group's annual
reports for the years ended 1998 through 2002.  Compl., ¶ 515.
It is alleged that these "unqualified audit opinions and reports
violated GAAS and greatly enhanced and facilitated the fraud
...."  Id.  Defendant PwC International, a membership-based
company organized in the United Kingdom with its U.S.
headquarters in New York, New York, is a professional services
organization with member firms around the world.  Id. ¶ 60.  PwC
International provides industry-focused assurance, tax and
advisory services for public and private clients primarily in

four areas: corporate accountability, risk management, structuring and mergers and acquisitions, and performance and process improvement. Id. The Complaint alleges that PwC International represents itself as a "truly global organisation" that "build[s] networks of highly skilled professionals around clients and provide[s] them with the benefit of PwC's collective knowledge and resources." Id. ¶ 62. The PwC International website states that "[o]n joining the PwC global network and becoming members of PwC International, member firms have the right to use the PwC name and to gain access to common resources, methodologies, knowledge and expertise. In return, they are bound to abide by certain common policies and to maintain the standards of the global network as formulated by the CEO of PricewaterhouseCoopers International Limited and approved by its Global Board." Id. ¶ 62.

Defendant PwC UK is a limited liability partnership registered in the United Kingdom. Id. ¶ 63. PwC, a member of the PwC global network, audits almost one-half of the FTSE 100, the 100 largest companies in the United Kingdom. Id. PwC UK provides industry-focused assurance, tax and advisory services for public and private clients and for companies requiring an audit for statutory or regulatory reasons connected with the filing of their annual and periodic financial information; PwC UK provides an assurance service to shareholders and management on

the truth and fairness of the information, and specifically
addresses any other regulatory reporting requirements, such as
those under the Sarbanes-Oxley Act of 2002.  Id.  With the
exception of the descriptions given above, the Complaint refers
to PwC International and Pwc UK collectively as "PwC."

     PwC was hired by the Shell Group and Shell Transport to
provide independent auditing and/or consulting services,
including the preparation, examination and/or review of Shell
Transport's and the Shell Group's consolidated financial
statements for the years 1998 through 2002, which were then
disseminated to investors in the United States.  Id. ¶ 65.  The
financial statements were presented to, reviewed and relied upon
by securities purchasers, governmental agencies, the investing
public and members of the financial community.  Id.  The
Complaint alleges that by virtue of its position, PwC, at all
relevant times, had access to RDS's key personnel, accounting
books and records, and documents concerning proved reserves.  Id.
PwC personnel, who were frequently present at the Companies'
respective corporate headquarters and major offices throughout
the Class Period, had access to the confidential corporate
financial and business information, including Shell and Royal
Dutch's true financial condition, financial statements and
reserve reporting problems, which Lead Plaintiff alleges PwC was
aware of and/or recklessly disregarded.  Id.  Furthermore, it is

-22-

alleged that PwC had the opportunity both to "observe and review the Companies' and the Shell Group's business and reporting practices, and to test the Company's and the Shell Group's internal and publicly reported financial statements, as well as the Shell Group's and the Company's internal controls." Id.

PwC was involved in the preparation and dissemination of the Shell Group's and Shell Transport's quarterly and year-end financial results throughout the Class Period. Id. ¶ 66. The Complaint further alleges that PwC examined and opined on the Shell Group's and Shell Transport's financial statements for the years 1998 through 2002. Id. It is alleged that PwC falsely represented that its audits had been conducted in accordance with GAAS, and wrongfully issued "clean" or unqualified audit reports in which it allegedly misrepresented that those financial statements fairly presented the financial condition and results of operations in conformity with GAAP. Id.

Defendant KPMG International is a Swiss cooperative of which it is alleged that all KPMG firms are members. Id. ¶ 67. KPMG International has a U.S. headquarters in New York, New York, and provides assurance, tax and legal, and financial advisory services to customers worldwide. It is alleged that like PwC International, KPMG International markets itself as a single global organization. Id. Defendant KPMG NV's headquarters is located in Amstelveen, The Netherlands, and it is part of the

professional services organization of KPMG International. Id. ¶
68. KPMG NV's core activities in The Netherlands include
assurance services, financial advisory services, and tax and
legal services. Id. The Complaint alleges that KPMG NV's
website states that KPMG NV purports to have knowledge of a
client's business and organization, such that it can act "as a
business partner" of that client. Id. With the exception of the
above descriptions, the Complaint refers to KPMG International
and KPMG NV collectively as "KPMG."

KPMG was hired by the Shell Group and Royal Dutch to provide
independent auditing and/or consulting services, including the
preparation, examination and/or review of Royal Dutch's and the
Shell Group's consolidated financial statements for the years
1998 through 2002. Id. ¶ 70. Those financial statements were
then disseminated to investors in the United States and were
presented to, reviewed and relied upon by securities purchasers,
governmental agencies, the investing public and members of the
financial community. Id. KPMG personnel, who were frequently
present at the Shell Group's and Royal Dutch's respective
corporate headquarters and major offices between 1998 and 2002,
had access to confidential corporate financial and business
information, including the Shell Group's and Royal Dutch's true
financial condition, financial statements and reserve reporting
problems, which Lead Plaintiff alleges KPMG was aware of and/or

-24-

recklessly disregarded.  Id.  Furthermore, it is alleged that
KPMG had the opportunity to "observe and review the Royal Dutch's
and the Shell Group's business and reserves reporting practices,
and to test the Companies' and the Shell Group's internal and
publicly reported financial statements, as well as the Shell
Group's and the Companies' internal controls."  Id.

     KPMG was involved in the preparation and dissemination of
the Shell Group's and Royal Dutch's quarterly, as well as year-
end, financial results throughout the Class Period.  Id. ¶ 72.
The Complaint further alleges that KPMG examined and opined on
the Shell Group's and Royal Dutch's 1998 through 2002 financial
statements.  Id.  It is alleged that KPMG falsely represented
that its audits had been conducted in accordance with GAAS, and
wrongfully issued "clean" or unqualified audit reports in which
it allegedly misrepresented that those financial statements
fairly presented the financial condition and results of
operations in conformity with GAAP.  Id.

     In addition to providing Independent Auditors' Reports to
the Shell Group, the Complaint alleges that both PwC and KPMG
also conducted reviews of the Group's quarterly financial
statements which were attached as exhibits to Forms 6-K.  It is
alleged that this review was conducted before the Form was filed
with the SEC.  Compl., ¶ 516.  Citing the GAC Report, the
Complaint states that the Shell Group has admitted that the

-25-